UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                   )
SETH GMINSKI and ELIZABETH GMINSKI, )
                                   )
        Plaintiffs,                )
                                   )
     v.                            )    C.A. No. 24-131 WES
                                   )
LIBERTY MUTUAL FIRE INSURANCE      )
COMPANY a/k/a LIBERTY MUTUAL       )
INSURANCE COMPANY,                 )
                                   )
        Defendant.                 )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

This case centers on an insurance dispute that arose after Plaintiffs Seth Gminski and Elizabeth Gminski (collectively, the "Gminskis") sustained flood damage at their North Providence, Rhode Island home. The Gminskis assert that Defendant Liberty Mutual Fire Insurance Company a/k/a Liberty Mutual Insurance Company ("Liberty") mishandled the insurance coverage and is therefore liable under various contractual and bad faith theories. See generally Am. Compl., ECF No. 1-2. Liberty now moves to dismiss those claims on the grounds that the Gminskis commenced this lawsuit outside the policy's limitation period and that the Gminskis do not assert allegations sufficient to establish their bad faith claims. Def.'s Mot. Dismiss 1, ECF No. 4.

For the reasons below, the Court DENIES Liberty's Motion.

**I. BACKGROUND**[1]

The Gminskis own and reside in a single-family home in North Providence (the "Property"). Am. Compl. ¶¶ 1, 5. On July 23, 2020, the Property sustained extensive water damage when a faulty flex line leading to the kitchen sink ruptured (the "Loss"). Id. ¶ 7. The rupture caused a flood on the main level of the home and penetrated the lower level as well. Id. The Gminskis maintained an insurance policy (the "Policy") with Liberty for the Property and timely notified it of the property damage. Id. ¶¶ 6, 8.

Liberty hired PuroClean Disaster Restoration Services, LLP ("PuroClean") to inspect the Property, assess the damage, and offer remedial services. Id. ¶ 9. Within days of the Loss, PuroClean performed those services and appraised the damage to be in the amount of $4,850.59. Id. ¶ 11. The Gminskis disputed that assessment and requested a second investigation. Id. ¶ 12. PuroClean then conducted another investigation in September 2020, finding that the Loss caused damages totaling $9,499.29 – nearly twice as much as the initial assessment. Id. ¶¶ 11, 14.

Displeased with PuroClean's assessments, the Gminskis retained the services of a public adjustor, Maria Tirocchi Femino.

---

[1] The Court assumes that the Gminskis' factual allegations are true for the purpose of assessing Liberty's Motion to Dismiss. See Pemental v. Sedgwick Claims Mgmt. Sys., Inc., No. CA 14-45-M, 2014 WL 2048279, at *1 n.2 (D.R.I. May 19, 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

2

Id. ¶ 15.  Femino performed an independent investigation and assessed the value of the damage to be $86,262.18.  Id. ¶ 16.  In response, Liberty offered the Gminskis $45,085.00 to resolve the claim.  Id. ¶ 17.  The Gminskis rejected that offer and requested an appraisal pursuant to R.I. Gen. Laws § 27-5-3, which creates a framework for the parties to engage a disinterested umpire - effectively an arbitrator - to assess disputed insurance claims.[2]  Id. ¶ 18; see R.I. Joint Reinsurance Ass'n v. White Holding Co., No. C.A. 77-590, 1981 WL 386510, at *2 (R.I. Super. Sept. 18, 1981) (stating that § 27-5-3 serves "to expedite the equitable settlement of disputes regarding the amount of loss in controversy").

On October 18, 2021, Liberty informed the Gminskis that it would not participate in the appraisal until the Gminskis produced a contents list.  Am. Compl. ¶ 21.  The Gminskis, nonetheless, claimed that they could not create a contents list because PuroClean had removed and disposed of the Property's damaged contents without creating an inventory or taking any photographs.  Id. ¶ 22.  Liberty did not accept the Gminskis' assertions and continued to abstain from the appraisal process, as evidenced by its letters dated April 12, 2022, May 23, 2022, and July 29, 2022.  Id. ¶ 23.  Finally, in July 2022, the Gminskis recreated the

---

[2] The Complaint mistakenly cites to R.I. Gen. Laws § 27-4-3.  See Am. Compl. ¶ 18, ECF No. 1-2.  The Court recognizes that the Gminskis rely on R.I. Gen. Laws § 27-5-3 because the Complaint quotes that statute's language.  See id.

contents list with the assistance of counsel. Id. ¶ 24. After the parties engaged in the appraisal process,[3] Liberty requested a fifth property inspection in December 2023. Id. ¶ 25.

In February 2024, the Gminskis commenced this case against Liberty for its conduct following the Loss that occurred approximately three-and-a-half years earlier. They assert that Liberty breached the Policy and the implied covenants of good faith and fair dealing because it failed to timely and properly respond to their claim. Id. at 5-7. Moreover, they contend that Liberty's actions constitute bad faith conduct under Rhode Island common law and statutory law. Id. at 7-8. Liberty now moves to dismiss. See generally Mot. Dismiss ("Motion").

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the plausibility of a plaintiff's claims. Spino v. Rushmore Loan Mgmt. Servs., LLC, 606 F. Supp. 3d 1, 2 (D.R.I. 2022). A complaint must merely offer "a short and plain statement of the claim showing that the pleader is entitled to relief." Garcia-Catalan v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)). To surpass that

---

[3] Although the Gminskis state that the parties engaged in the appraisal process between late 2022 and early 2023, the Complaint provides no such allegations. Mem. Supp. Pl.'s Obj. Def.'s Mot. Dismiss 4, ECF No. 6-1; see generally Am. Compl. Nonetheless, the parties' participation in the appraisal process is not germane to the Court's analysis.

4

threshold, "a plaintiff 'need not demonstrate that it is likely to prevail' on its claim." Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Garcia-Catalan, 734 F.3d at 102). Instead, "the complaint need include only enough factual detail to make the asserted claim 'plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The Court adheres to a two-step inquiry when testing the plausibility of claims. DiCristoforo v. Fertility Sols., P.C., 521 F. Supp. 3d 153, 155 (D.R.I. 2021). The first combs "through the averments in the complaint, separating conclusory allegations (which may be disregarded) from allegations of fact (which must be credited)." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013). The second requires a determination of "whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Garcia-Catalan, 734 F.3d at 103 (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). Notably, that determination requires the Court to "indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

**III. DISCUSSION**[4]

**A. The Policy's Limitation Period Does Not Warrant Dismissal.**

Liberty asserts that the Policy's limitation provision contractually bars the Gminskis' claims. Mem. Law. Supp. Liberty's Mot. Dismiss Pls.' Compl. 6-8, ECF No. 4-1. The Policy expressly states that the parties must commence a legal action "within two years after the date of loss." Id. at 6.[5] Consequently, Liberty contends that the Gminskis' claims are dead in the water because they filed this lawsuit over three years after the Loss. Id.

Under Rhode Island law, contractual provisions that shorten the time to sue are generally enforceable, with the caveat that "the interval between the loss and the mandatory institution of litigation is reasonable." Donahue v. Hartford Fire Ins. Co., 295 A.2d 693, 694 (R.I. 1972). In assessing what constitutes a reasonable interval, the Rhode Island Supreme Court has regularly upheld provisions that require a party to commence a legal action within two years of the loss. See, e.g., Maywood Corp. v. NLC Ins. Cos., 754 A.2d 109, 109-10 (R.I. 2000) (Mem.) (finding two-year limitation valid); Greater Providence Tr. Co. v. Nationwide

---

[4] Because this is a diversity case, the Court applies Rhode Island state law. See Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020).

[5] The Court may consider the Policy language when assessing Liberty's Rule 12(b)(6) Motion because the Policy is central to the Gminskis' claims and sufficiently referenced in the Complaint. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Mut. Fire Ins. Co., 355 A.2d 718, 720 (R.I. 1976) (upholding one-year limitation); Donahue, 295 A.2d at 694 (same).  Therefore, the Policy's two-year limitation provision sets forth a reasonable interval.

Rather than dispute the reasonableness of the Policy's limitation provision, the Gminskis assert that Liberty is estopped from enforcing it.  Mem. Supp. Pl.'s Obj. Def.'s Mot. Dismiss ("Gminski Mem.") 5-9, ECF No. 6-1.  An insurer may be estopped from invoking a limitation provision when it engages in settlement negotiations.  Maywood Corp., 754 A.2d at 110.  Mere negotiations, however, do not warrant estoppel.  Chase v. Nationwide Mut. Fire Ins. Co., 160 A.3d 970, 974 (R.I. 2017).  Rather, estoppel is only appropriate in "extraordinary circumstances" when:

> (1) the insurer, by his actions or communications, has assured the claimant that a settlement would be reached, thereby inducing a late filing, or (2) the insurer has intentionally continued and prolonged negotiations in order to cause the claimant to let the limitation pass without commencing suit.

McAdam v. Grzelcyzk, 911 A.2d 255, 260 (R.I. 2006) (quoting Gagner v. Strekouras, 423 A.2d 1168, 1170 (R.I. 1980)).

Estoppel presents a question of fact as to whether the insurer "lulled [the insured] into believing that filing suit is unnecessary."  Id.  Specifically, courts examine whether the insurer made any express representations or engaged in affirmative conduct "that could reasonably deceive another and induce reliance

7

that would work to the disadvantage of the individual relying upon the representation." Gross v. Glazier, 495 A.2d 672, 674 (R.I. 1985). The foremost example of such conduct is a concession of liability by the insurer. Maywood, 754 A.2d at 110; see Gagner, 423 A.2d at 1170 (declining to apply limitation period because the insurer conceded liability).

The Gminskis assert sufficient factual allegations to survive the pleadings stage. They allege that Liberty offered to resolve the claim in October 2020 and then continued to participate in inspections and appraisals. Am. Compl. ¶¶ 17-20, 23, 25. Although Liberty did not expressly concede liability, the allegations demonstrate that Liberty only disputed the amount of damages, which supports a finding of estoppel. See Gagner, 423 A.2d at 1170 ("Courts have frequently rejected attempts for summary judgment when, as here, the insurer concedes liability, leaving only the question of damages unresolved." (internal citations omitted)); Yablonowski v. Com. Union Ins. Co., No. WC 88-178, 1988 WL 1017289, at *2 (R.I. Super. Oct. 25, 1988) (refusing to dismiss claim based on limitation provision when "the only question remaining was the amount of settlement which it suggested could be resolved possibly by an appraisal procedure or by sending further documentation").

Further, Liberty's purported conduct after the limitation period could have induced the Gminskis to believe that legal action

8

was unnecessary. The Complaint illustrates that Liberty took affirmative steps to resolve the claim after the two-year deadline, including demanding a contents list on July 29, 2022 and requesting a fifth property inspection in December 2023. Am. Compl. ¶¶ 23, 25; see Comfortably Numb Marine, LLC v. Markel Am. Ins. Co., No. CA 15-100ML, 2015 WL 6396076, at *3 (D.R.I. Oct. 21, 2015) (denying motion to dismiss when the insurer engaged in investigation process after limitation deadline). Moreover, Liberty did not notify the Gminskis that the two-year period had expired or that it intended to invoke that provision. See id. (noting that the insurer did not "advise Plaintiff's counsel that the twelve-month period has expired or that further discussion of the claim is academic because Plaintiff had lost its right to sue for coverage under the policy").

Accordingly, the Court DENIES Liberty's Motion as it relates to the Policy's limitation period. Liberty, however, may renew the contractual limitation argument after the parties engage in discovery if it develops a sufficient record to support such a motion. See id. (denying motion to dismiss so parties could conduct discovery on estoppel).

### B. The Complaint's Factual Allegations State Bad Faith Claims.

A plaintiff establishes a bad faith claim "when the proof demonstrates that the insurer denied coverage or refused payment

9

without a reasonable basis in fact or law for the denial." Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 (R.I. 2002). Rhode Island courts utilize the "fairly debatable" inquiry, which precludes bad faith claims when the insurer disputes a "claim that is fairly debatable." Imperial Cas. & Indemn. Co. v. Bellini, 947 A.2d 886, 893 (R.I. 2008) (quoting Skaling, 799 A.2d at 1011). That test hinges on "whether there is sufficient evidence from which reasonable minds could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." Beacon Mut. Ins. Co. v. St. Paul Mercury Ins. Co., 7 F. Supp. 3d 155, 168 (D.R.I. 2014) (quoting Skaling, 799 A.2d at 1011) (internal edits omitted).

The Gminskis contend that Liberty acted in bad faith when investigating and evaluating their claim. Gminski Mem. 5, 8-9. Specifically, the Gminskis allege that Liberty refused to participate in the appraisal process without a contents sheet, despite knowing that the Gminskis could not create one due to PuroClean's actions. Am. Compl. ¶¶ 21-23. They further allege that Liberty requested numerous property inspections and assessed the claim for amounts that were significantly below the Gminskis' adjuster's calculation. Id. ¶¶ 11, 14, 16, 20, 25. At this stage, those allegations permit a plausible inference that Liberty

knowingly acted in an unreasonable manner by unnecessarily prolonging the claims process.

Accordingly, the Court DENIES Liberty's Motion with respect to the bad faith claims. Like the limitation period issue, Liberty may renew this argument after the parties engage in discovery.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Liberty's Motion to Dismiss, ECF No. 4.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: July 15, 2024